## Richmond

## BOARD OF SUPERVISORS OF FAIRFAX COUNTY v. M. SETH HORNE, ET AL.

August 28, 1974.

Record No. 730928.

Present, All the Justices.

*Collister Johnson, Jr., Assistant County Attorney for Fairfax County (Frederic Lee Ruck, County Attorney for Fairfax County, on brief), for plaintiff in error.*

*Royce A. Spence (Spence & Ragland, on brief), for defendants in error.*

Poff, J., delivered the opinion of the court.

Brook Drive, a secondary road in Lee Boulevard Heights Subdivision of Fairfax County, is located between and runs parallel to U.S. Route 50 and State Route 7, two major arteries serving commuter traffic to and from the Washington, D. C., metropolitan complex. The residential subdivision is adjacent to "Seven Corners", a busy shopping center. Seeking to avoid traffic congestion on the two major thoroughfares, commuters, shoppers, and other non-residential drivers created a traffic flow on Brook Drive in excess of 2000 cars a day.

On its own motion and invoking the procedure set forth in Code § 33.1-151 (Repl. Vol. 1970), a part of Title 33.1, Art. 11, *Abandonment and Discontinuance of Roads in a Secondary System*, the Board of Supervisors of Fairfax County (Board) adopted a resolution proposing the abandonment of a

twenty-foot section of Brook Drive at its intersection with Holly Street, thereby creating a cul-de-sac. M. Seth Horne and D. E. Gingery (Landowners), owners of property along Brook Drive, filed a protest. Following a public hearing, the Board passed a motion and issued an order authorizing abandonment upon a finding "that no public necessity exists for the continuance of . . . and that the public would be served best by abandoning" the section.

Pursuant to Code § 33.1-152 (Repl. Vol. 1970),[1] Landowners appealed and the court below heard the matter de novo. By final order entered June 29, 1973, the court ruled as a matter of law that "the Order of the Board . . . was an action designed to regulate traffic and not an action within the intent and purpose of Section 33.1-152 Code of Virginia, 1950, as amended", and, finding "that public necessity exists for the continuance of the section of road . . . and that the welfare of the general public will be served best" thereby, disallowed abandonment and ordered that the road remain open.

The Board argues that the court's ruling was erroneous. As to the court's finding, the Board assigns certain errors relating to sufficiency of the evidence and burden of proof. The Board also raises constitutional challenges to the statutory provision of a trial de novo. We agree with Landowners and the court below that Code § 33.1-152 (Repl. Vol. 1970) and the preceding statute to which it relates were not intended by the General Assembly to authorize a local board to abandon a secondary public road because its utilization by the public becomes too great. Since we hold that these statutory provisions were improperly invoked by the Board and the court's order disallowing abandonment must, therefore, be affirmed, we do not reach the constitutional questions or other issues raised by the Board.

As appears from a review of Code Title 33.1 (Repl. Vol. 1970), "*Highways, Bridges and Ferries*", general jurisdiction over

---

[1] Code § 33.1-152 reads in pertinent part as follows:

"The circuit court shall hear the matter de novo . . . Upon the hearing of the appeal, the court shall ascertain and by its order determine whether public necessity exists for the continuance of the section of road . . . or whether the welfare of the public will be served best by abandoning the section of the road . . ."

secondary roads is vested in the Department of Highways and State Highway Commission.

"The control, supervision, management and jurisdiction over the secondary system of State highways shall be vested in the Department of Highways. . . . The boards of supervisors . . . shall have no control, supervision, management and jurisdiction over such public roads. . . . Except as otherwise provided in this article, the State Highway Commission shall be vested with the same powers, control and jurisdiction over the secondary system of State highways in the several counties . . . as were vested in the boards of supervisors . . . on June twenty-one, nineteen hundred thirty-two . . ." Code § 33.1-69 (Repl. Vol. 1970).

"The State Highway Commission shall be vested with the following powers and shall have the following duties:

. . . .

(3) *Traffic regulations.* — To make rules and regulations, from time to time, not in conflict with the laws of this State, for the protection of and covering traffic on and the use of systems of State highways and to add to, amend or repeal the same." Code § 33.1-12 (Repl. Vol. 1970).

However, the General Assembly has provided certain procedures whereby local governing bodies may abandon certain secondary roads. One procedure, the procedure invoked by the Board, is that structured in Code § 33.1-151 (Repl. Vol. 1970). In the language of that statute, its procedure is applicable when a secondary road is "deemed . . . no longer necessary for the uses of the secondary system of highways". This language indicates that this exercise of the power of abandonment is predicated upon public disuse, not upon excessive public use.

This conclusion is reinforced by the language of Code § 33.1-152 (Repl. Vol. 1970) which authorizes the court to "enter such orders as seem to it just and proper for keeping open such section of road . . . for the benefit of such party or parties as would by such abandonment be deprived of access to a public road." This language shows that the General Assembly contemplated that the abandonment procedure of the related statute would be invoked in situations where abandonment could

adversely affect, not the travelling public at large, but an individual party or a few parties.

The same is true of language in Code § 33.1-154 (Repl. Vol. 1970) which prohibits conveyance of an abandoned section of road when a single landowner residing along the road can show "that such section or road should be kept open for the *reasonable convenience* of such landowner, or the public" (Emphasis supplied). Such language and the legislative purpose it imports are wholly inconsistent with the Board's position that the General Assembly intended the statutes the Board invoked to empower a local board to abandon a secondary public road because it was too heavily travelled by the public at large.

The General Assembly has provided an *"Alternative procedure for abandonment of old road . . ."* when "a new road . . . is constructed in lieu thereof". Code § 33.1-155 (Repl. Vol. 1970). Under this alternative procedure, a board's abandonment discretion is not so limited as it is under the procedure followed here. This statute gives the landowner no appeal of right; the exercise of a board's power to abandon is subject to challenge only upon a showing of "fraud or flagrant hardship evidencing abuse of discretion by the Board." *American Oil Co. v. Leaman,* 199 Va. 637, 649, 101 S.E.2d 540, 550 (1958).

In granting local boards this broader abandonment power, the General Assembly obviously recognized that, when a new road is constructed to replace an old road, there is only a minimal possibility that public use will be diminished and a strong probability that public use will be facilitated and the capacity for public use increased. But when a heavily travelled road is abandoned and no new road is constructed to replace it, the capacity for public use is diminished, the traffic burden is shifted to other roads, and public use is encumbered. That, we believe, was an important reason why the General Assembly saw fit in enacting Code § 33.1-151 (Repl. Vol. 1970) to restrict a local board's power to abandon secondary roads to those roads "no longer necessary for the uses of the secondary system".

We do not deprecate the gravity of the traffic problem the Board confronted or question its good faith in pursuing the procedure it chose. Nor do we suggest alternative solutions. We hold only that the statutory procedure chosen was not intended by the General Assembly as a remedy for this problem.

The judgment will be affirmed and Brook Drive will be open to public use as a public road.

*Affirmed.*